**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Islamuddin A.,[1]

Petitioner,

v.

Todd Blanche, Markwayne Mullin, David J. Venturella, David Easterwood, and Joel Brott,

Respondents.

Case No. 26-CV-3340 (ECT/JFD)

**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Petitioner Islamuddin A.'s petition for a writ of habeas corpus, filed pursuant to 28 U.S.C. § 2241. (Dkt. No. 1.) Petitioner, a citizen of Afghanistan, has been detained by U.S. Immigration and Customs Enforcement ("ICE") at the Sherburne County Jail in Elk River, Minnesota, since October 1, 2025. Petitioner asserts that his detention is unlawful for three reasons: (1) his detention violates substantive due process because Respondents[2] have not shown that he presents a flight risk or is a danger to the community; (2) his detention violates procedural due process because the Form I-200 administrative warrant was defective and he did not receive a Notice to Appear ("NTA") until after he was detained; and (3) his arrest without a warrant violated the Fourth

---

[1] The District of Minnesota has adopted a policy of using only the first name and last initial of nongovernmental parties in immigration cases.

[2] The Court uses the term "Respondents" to refer only to the federal officials.

Amendment, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.3(d). (*See* Pet. ¶¶ 11, 14, 18, 72–73, 75, 93, 95–96, 108, Dkt. No. 1; Pet'r's Reply at 1, Dkt. No. 7.) Respondents oppose the petition. As set forth below, the Court concludes that Petitioner's arrest was unlawful and recommends that the petition be granted and Petitioner be released.

**I. Background**

Petitioner is a citizen of Afghanistan who has lived in the United States since August 27, 2021, when he was paroled here through the Operation Allies Welcome program. (Pet. ¶ 3; Draves Decl. ¶¶ 4–5, Dkt. No. 6.) Petitioner had permission to remain in the United States until August 26, 2023. (Draves Decl. ¶ 5.) Petitioner lived in Bloomington, Minnesota, with his wife and three children, and he worked full-time. (Pet. ¶ 49.)

On June 15, 2023, Petitioner was arrested for the offense of prostitution involving an individual between the age of 13 and 15 years old, in violation of Minn. Stat. § 609.324, subd. 1(b)(1). (*See* Draves Decl. Ex. C at 1.) The following month, on July 21, 2023, Petitioner applied for an extension of parole. (*Id.*) His request was denied due to the prostitution charge and his failure to provide additional information about the charge to USCIS. (*Id.*) On November 1, 2024, Petitioner was convicted of violating Minn. Stat. § 609.324, subd. 1(c)(3),[3] and sentenced to 30 days in jail. (Draves Decl. Ex. B at 1.)

The Record of Deportable/Inadmissible Alien contains a narrative of Petitioner's arrest and detention on October 1, 2025. (Draves Decl. Ex. H.) On that date, federal

[3] This statute prohibits hiring, offering, or agreeing "to hire an individual who the actor reasonably believes to be under the age of 18 years but at least 16 years to engage in sexual penetration or sexual contact."

deportation and border patrol officers were conducting a targeted fugitive operation, the focus of which was Petitioner. (*Id.* at 2.) At 6:10 a.m., officers recognized Petitioner's vehicle driving through his apartment complex, and they stopped the car by activating their emergency lights. (*Id.* at 1, 2.) Petitioner said he did not have identification on him, but he confirmed his name and date of birth when asked. (*Id.* at 2.) Petitioner was "advised of ICE arrest," ordered out of the vehicle, handcuffed, searched, and transported to the Bishop Henry Whipple Building at Fort Snelling. (*Id.*)

Also on October 1, 2025, an NTA was issued by Supervisory Detention and Deportation Officer ("SDDO") Olson, characterizing Petitioner as an "arriving alien" who is "not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card[,] or other valid entry document" and who had been convicted of prostitution under Minn. Stat. § 609.324, subd. 1(c)(3). (Draves Decl. Ex. D at 1, 4.)

A third event occurred on October 1, 2025: a Form I-200 administrative warrant was served on Petitioner after he had been transported to Fort Snelling. (Draves Decl. Ex. E at 1.) The probable-cause section of the form is blank. (*Id.*) No probable-cause box is checked, and no other information related to probable cause is noted. (*Id.*) The form reflects that it was issued by SDDO Olson on August 29, 2025—more than a month earlier. (*Id.*)

On October 17, 2025, Petitioner filed an I-589 Application for Asylum and Withholding of Removal Relief in Immigration Court. (Draves Decl. Ex. F at 4.) An immigration judge ("IJ") issued a decision on February 13, 2026, denying asylum and withholding of removal, but granting deferral of removal under the Convention Against Torture. (Draves Decl. Ex. G at 3.) Petitioner was ordered removed to any country other

than Afghanistan that will accept him. (*Id.* at 6.) Petitioner timely appealed, and his appeal remains pending. (Draves Decl. ¶ 12.)

## II. Discussion

Federal courts have jurisdiction to order the release of a person held in the custody of the United States "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "This authority includes the release of detained noncitizens . . . ." *Sarail A. v. Bondi*, 803 F. Supp. 3d 775, 779 (D. Minn. 2025). Petitioner has the "burden to prove illegal detention by a preponderance of the evidence." *See Mohammed H. v. Trump*, 786 F. Supp. 3d 1149, 1154 (D. Minn. 2025).

### A. Petitioner's Arrest

Petitioner argues that his arrest was unlawful under the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.3(d). Petitioner contends it is immaterial whether he is detained under § 1225 or § 1226 because, in either case, the Form I-200 administrative warrant was invalid and § 1357(a)(2) does not apply.

The Fourth Amendment protects "against unreasonable searches and seizures," U.S. Const. amend. IV, and its protection applies to the arrests of noncitizens, *see United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010). Congress has authorized two mechanisms for arresting a noncitizen during the removal process. *See Pedro D.C. v. Blanche*, No. 26-CV-2450 (KMM/DLM), 2026 WL 1759444, at *1 (D. Minn. June 18, 2026). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, under 8 U.S.C. § 1357, an immigration officer may

> arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . . .

8 U.S.C. § 1357(a)(2). "Because the Fourth Amendment applies to arrests of illegal aliens, the term 'reason to believe' in § 1357(a)(2) means constitutionally required probable cause." *Quintana*, 623 F.3d at 1239.

The Court begins with the Form I-200 administrative warrant. The form issued in this case does not set forth any basis for probable cause whatsoever. This is—at minimum—cause for concern. *See Sergio P. v. Bondi*, No. 26-CV-1538 (ECT/DTS), 2026 WL 497290, at *2 (D. Minn. Feb. 23, 2026) ("And the warrant provided with Respondents' answer raises several concerns. None of the boxes are checked that would explain the basis for Sergio's arrest."). A Form I-200 administrative warrant that has no probable-cause box checked, and no other accompanying justification for detention, is invalid. *Jose R. M. M. v. Bondi*, No. 26-CV-1165 (JRT/DTS), 2026 WL 412447, at *1 (D. Minn. Feb. 13, 2026).

Counsel for Respondents makes a post-hoc attempt to cobble together probable cause, citing Petitioner's criminal conviction, the denial of his parole extension request, that a joint task force had been "looking for" Petitioner for a month, that the joint task force confirmed Petitioner's identity before stopping his car, Petitioner's confirmation of his name and birthdate, and the issuance of the NTA. (Resp'ts' Resp. at 13–14, Dkt. No. 5.) There are several problems with this attempt. First, all but the first two of these events occurred *after* the Form I-200 administrative warrant was issued and therefore could not

have contributed to probable cause for the Form I-200. Second, assuming for purposes of this Report and Recommendation that Petitioner's arrest and the denial of his parole extension request would constitute probable cause—a proposition the undersigned thinks is not at all a certainty—SDDO Olson, who signed the Form I-200 administrative warrant provided no supporting declaration—then, or now—setting forth any basis for probable cause, much less that it was based on Petitioner's criminal conviction and the denial of his parole extension request. Not even SDDO Draves, who provided the supporting declaration for Respondents' response to the petition, described the purported probable cause. That leaves the Court with only counsel's arguments made in a brief. Third, there is no support in the record for counsel's statement that a joint task force had been "looking for" Petitioner for a month. The Court notes that to the contrary, ICE had Petitioner's home address, where he lived with his wife and children.

Respondents suggest that the Form I-200 administrative warrant's failure to specify the basis for probable cause was a typographical mistake, citing *United States v. Arenal*, 768 F.2d 263, 267 (8th Cir. 1985). (Resp'ts' Resp. at 14 n.5.) The errors in the *Arenal* warrants were incorrectly typed addresses, however, not the complete omission of any probable cause allegations altogether. *See Arenal*, 768 F.2d at 267.

Lack of probable cause is not the only problem with the Form I-200 administrative warrant. The timing of its issuance is also troublesome. The Form I-200 administrative warrant was issued on August 29, 2025—more than a month *before* the NTA was issued. A Form I-200 administrative warrant authorizes the arrest of a noncitizen if it is issued "*[a]t the time of* issuance of the notice to appear, *or at any time thereafter*." 8 C.F.R.

§ 236.1(b)(1) (emphasis added); *see Vladimir G. v. Easterwood*, No. 26-CV-2971 (JMB/ECW), 2026 WL 1786418, at *2 (D. Minn. June 22, 2026); *Jesus F.D. v. Mullin*, No. 26-CV-2486 (PJS/DTS), slip op. at 5 (D. Minn. June 10, 2026). "This is because an NTA is a 'case-initiating pleading[]'—'like an indictment in a criminal case'—that 'serves as the basis for commencing a grave legal proceeding.'" *Jesus F.D.*, No. 26-CV-2486 (PJS/DTS), slip op. at 5–6 (quoting *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021)) (alteration in *Jesus F.D.*). Consequently, "DHS may arrest a non-citizen using a Form I-200 only if the Form I-200 issues at the same time or after DHS issues an NTA." *Vladimir G.*, 2026 WL 1786418, at *2 (citing 8 U.S.C. § 1226(a); 8 C.F.R. § 236.1(b)(1)); *see Jesus F.D.*, No. 26-CV-2486 (PJS/DTS), slip op. at 5 ("[A] warrant issued before removal proceedings have begun purports to exercise authority that does not yet exist.").

Here, the Form I-200 administrative warrant was issued more than a month before the NTA—not at the same time, and not thereafter. Thus, the Form I-200 administrative warrant was invalid, and Petitioner could not be arrested lawfully pursuant to it. *See Vladimir G.*, 2026 WL 1786418, at *3; *Jesus F.D.*, No. 26-CV-2486 (PJS/DTS), slip op. at 6.[4]

---

[4] The Court is not persuaded to depart from the case authority in this District by Respondents' citation to *Ramirez v. Genalo*, No. 26-CV-3229 (HG), 2026 WL 1815771 (E.D.N.Y. June 24, 2026). (Resp'ts' Resp. at 13.) *Ramirez* cannot be squared with the reasoning in, for example, *Jesus F.D.* "A Form I-200 warrant empowers ICE to arrest aliens *during* removal proceedings." *Jesus F.D.*, No. 26-CV-2486 (PJS/DTS), slip op. at 5 (emphasis in original). "Thus, a warrant issued before removal proceedings have begun purports to exercise authority that does not yet exist." *Id.* "To be valid, then, a Form I-200 warrant must issue 'at the same time or after the Department of Homeland Security issues an NTA.'" *Id.* (quoting *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026)).

Having found the Form I-200 administrative warrant invalid, the Court now considers whether Petitioner's arrest was authorized under 8 U.S.C. § 1357(a)(2). Under that statute, an ICE officer has the power to arrest a noncitizen without a warrant when the officer has probable cause to believe the person "is in the United States in violation of any [law regulating the admission, exclusion, expulsion, or removal of noncitizens] and is likely to escape before a warrant can be obtained for his arrest." 8 U.S.C. § 1357(a)(2). Like Respondents' probable cause argument, this attempted justification is fatally flawed by the utter lack of supporting evidence. Nothing in the record before the Court suggests that Petitioner was likely to escape before a valid arrest warrant could be obtained. "Just because a noncitizen is unlawfully present in the United States does not mean that he or she is likely to escape." *Francisco M.A. v. Blanche*, No. 26-CV-2032 (JRT/EMB), 2026 WL 1229701, at *3 (D. Minn. May 5, 2026) (citing *Ruben D.A.G. v. Blanche*, No. 26-CV-2041, slip op. at 8 (D. Minn. Apr. 20, 2026) ("Anyone without a lawful presence does not immediately present a likelihood of escape merely by being a noncitizen.")). Respondents do not even argue that Petitioner was likely to escape. The Court concludes that Petitioner's arrest was not authorized under 8 U.S.C. § 1357(a)(2).

In sum, Petitioner's arrest was not lawful under either § 1226(a) or § 1357(a)(2). The remedy is immediate release.[5] *See Vladimir G.*, 2026 WL 1786418, at *3; *Jesus F.D.*, No. 26-CV-2486 (PJS/DTS), slip op. at 9.

---

[5] Because the Court finds that Petitioner was unlawfully arrested and recommends release on Fourth Amendment grounds, the Court does not reach Petitioner's other arguments.

### B. Abbreviated Timeline for Objections

The Court draws the parties' attention to the abbreviated timeline set forth in the Notice below for filing objections and responses to objections.

## III. Recommendation

Based on all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that Petitioner Islamuddin A.'s petition for a writ of habeas corpus (Dkt. No. 1) be **GRANTED** to the extent set forth above and that Petitioner be released immediately.

Dated: August 6, 2026

*s/ John F. Docherty*
JOHN F. DOCHERTY
United States Magistrate Judge

## NOTICE

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals. Under D. Minn. LR 72.2(b)(1), "[a] party may file and serve specific written objections to a magistrate judge's proposed findings and recommendations within 14 days after being served with a copy of the recommended disposition, *unless the court sets a different deadline*." (Emphasis added.) **The Court modifies the deadline such that objections are due on or before August 13, 2026. Responses to objections are due on or before August 20, 2026.** All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).