UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Islamuddin A.,

Petitioner,

v.

Todd Blanche, *in his official capacity as Attorney General of the United States*; Markwayne Mullin, *in his official capacity as Secretary of the Department of Homeland Security*; David J. Venturella, *in his official capacity as Acting Director of United States Immigration and Customs Enforcement*; David Easterwood, *in his official capacity as Acting Director, St. Paul Field Office, U.S. Immigration and Customs Enforcement*; and Sheriff Joel Brott, *in his official capacity as Sheriff of Sherburne County*,

Respondents.

File No. 26-cv-3340 (ECT/JFD)

**OPINION AND ORDER**

---

Magistrate Judge John F. Docherty issued a Report and Recommendation ("R&R") dated August 6, 2026. ECF No. 8. Judge Docherty recommended that Petitioner Islamuddin A.'s Verified Petition for Writ of Habeas Corpus [ECF No. 1] be granted, and that Islamuddin be released. *See id*. Respondents[1] objected to the R&R, ECF No. 9,

[1] "Respondents" refers to Attorney General Blanche, Secretary Mullin, and Acting Directors Venturella and Easterwood. Sherburne County Sheriff Joel Brott has not appeared in these proceedings.

triggering de novo review pursuant to 28 U.S.C. § 636(b)(1) and Local Rule 72.2(b)(3). Familiarity with the R&R is presumed.

Islamuddin is a citizen of Afghanistan. Pet. ¶¶ 3, 48. On August 27, 2021, Islamuddin was paroled into the United States pursuant to Operation Allies Welcome with authorization to remain in the United States until August 26, 2023. ECF No. 6-8 at 2–3; *see also* Pet. ¶ 3 (explaining that Islamuddin "has resided in the United States for more than 4 years after being evacuated by the U.S. military and . . . brought to the United States through the Operation Allies Welcome . . . program on August 27, 2021").

On June 15, 2023, Islamuddin was arrested in Carver County for "Prostitution-Actor Hires or Agrees to Hire and Reasonably Believes Under 18 but at Least 16" in violation of Minnesota Statutes 609.324, subdiv. 1(c)(3). *See* Pet. ¶ 7; ECF No. 6-8 at 3. Islamuddin ultimately pleaded guilty to that offense, *see* Petition to Enter Guilty Plea, *State v. Atal,* No. 10-CR-23-539, Index No. 54 (Minn. Dist. Ct. July 9, 2024), and on November 1, 2024, he was sentenced to 30 days in jail, *see id.*, Index No. 68 (Nov. 1, 2024).

On July 21, 2023, Islamuddin applied to U.S. Citizenship and Immigration Services ("USCIS") for an extension of his parole. *See* ECF No. 6-3 at 1. In a Notice of Decision dated September 27, 2024, USCIS denied Islamuddin's parole extension, citing the fact that he had been convicted of a crime and failed to respond to USCIS's Notice of Intent to Deny. *See* ECF No. 6-3 at 1–2.

On October 1, 2025, as described in Islamuddin's Form I-213 Record of Deportable/Inadmissible Alien, federal deportation and border patrol officers "were conducting targeted fugitive operations in the area" of Islamuddin's apartment complex

"while attempting to locate a known criminal alien [Islamuddin]." *See* ECF No. 6-8 at 2. Officers identified a male driving [Islamuddin's] known vehicle," and stopped the car "by activating emergency lights." *Id.* "The vehicle yielded to the right and came to a stop." *Id.* Although Islamuddin "claimed not to have identification," he "confirmed his name and date of birth when asked." *Id.* Islamuddin then was "transported to the MN ICE Office at Fort Snelling without incident for administrative processing." *Id.*

That same day (October 1), a Notice to Appear was issued, signed by Supervisory Detention and Deportation Officer ("SDDO") Olson. *See* ECF No. 6-4. The Notice to Appear listed Islamuddin as "an arriving alien" and stated that he was "an immigrant not in possession of a valid unexpired immigrant visa, reentry permit, border crossing card, or other valid entry document required by the Immigration and Nationality Act" and that he had been convicted of prostitution under Minnesota Statutes § 609.324, subdiv. 1(c)(3). *See id.* at 1, 4. The Notice to Appear charged Islamuddin as subject to removal pursuant to INA §§ 212(a)(7)(A)(i)(I) and 212(a)(2)(A)(i)(I), codified at 8 U.S.C. §§ 1182(a)(7)(A)(i)(I) and 1182 (a)(2)(A)(i)(I). *See id.* at 4.

Also on October 1, a Form I-200 administrative warrant was served on Islamuddin at Fort Snelling. *See* ECF No. 6-5. The Form I-200 warrant, initially authorized by SDDO Olson, was dated August 29, 2025. *See id.* None of the boxes on the Form I-200 warrant describing the basis for the probable-cause determination were checked. *See id.*

On October 17, 2025, Islamuddin filed an I-589 Application for Asylum and for Withholding of Removal. ECF No. 6-6. In a decision dated February 13, 2026, an immigration judge denied Islamuddin's request for asylum and withholding of removal,

but granted deferral of removal under the Convention Against Torture. *See* ECF No. 6-7 at 3. The immigration judge ordered Islamuddin removed "to any other country, but AFGHANISTAN, that will accept him." *See id.* at 6. Islamuddin appealed the denials of asylum and withholding of removal, and as of the Petition's filing, that appeal was pending. *See* Pet. ¶ 66.

Islamuddin is presently detained at Sherburne County Jail in Elk River, Minnesota. Pet. ¶ 1. Islamuddin filed his Petition on July 18, 2026, asserting that his detention violates his Fifth Amendment rights to substantive and procedural due process, *see* Pet. ¶¶ 67–75 (Count I); *see id.* ¶¶ 76–84 (Count II), and that his arrest without a valid warrant or a probable cause determination violated the Fourth Amendment, 8 U.S.C. § 1357(a)(2), and 8 C.F.R. § 287.3(d), *see id.* ¶¶ 85–112 (Count III). Islamuddin seeks immediate release. *See* Pet. at 28.

In the R&R, Judge Docherty concluded that Islamuddin's arrest was unlawful and recommended the Petition be granted and that Islamuddin be released. *See* ECF No. 8. Specifically, Judge Docherty determined the Form I-200 administrative warrant was invalid because it "[did] not set forth any basis for probable cause whatsoever," and it contained "no other accompanying justification for detention." *Id.* at 5. Judge Docherty also concluded that the timing of the Form I-200 warrant's issuance was problematic because it was issued more than a month before Islamuddin's Notice to Appear, and thus Islamuddin could not be arrested lawfully pursuant to the warrant. *See id.* at 6–7. Finally, Judge Docherty determined that there was no basis for a warrantless arrest pursuant to 8 U.S.C. § 1357(a)(2). *Id.* at 8.

Respondents articulate three objections to the R&R. (1) Respondents argue that information about Islamuddin's conviction and parole denial "was known" prior to the Form I-200 warrant's issuance, and that alone created sufficient probable cause to justify his arrest. ECF No. 9 at 3–4. (2) Respondents argue that the R&R erred in concluding that the Form I-200 warrant improperly preceded the Notice to Appear. *See* ECF No. 9 at 2. (3) Respondents argue that the warrantless requirements of 8 U.S.C. § 1357 do not apply because Islamuddin was subject to mandatory detention under § 1225(b)(2). *See id.* at 4–5.

Assuming Respondents are correct about the first issue, persuasive precedents support the conclusion that they are incorrect about the second. The timing of the Form I-200 warrant's issuance renders the warrant invalid because the Form I-200 warrant issued more than a month before the Notice to Appear. ECF No. 8 at 7. Respondents do not dispute that the warrant preceded the Notice to Appear. *See* ECF No. 5 at 2. Respondents argue that the R&R is based on a misunderstanding of the relevant regulation, 8 C.F.R. § 236.1(b)(1).[2] *See* ECF No. 9 at 2. I disagree. Courts in this District have found that a Form I-200 warrant that precedes a Notice to Appear is invalid because it "purports to exercise authority that does not yet exist." *See Jesus F.D. v. Mullin*, No. 26-cv-2486 (PJS/DTS), slip op. at 5–6 (D. Minn. June 10, 2026), ECF No. 10 (citations omitted); *Luis A.S. v. Easterwood*, No. 26-cv-2447 (PJS/DTS), slip op. at 6 (D. Minn. May 26, 2026),

[2] Section 236.1(b)(1) states: "At the time of issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I–200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1).

ECF No. 9; *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026). As then-Chief Judge Schiltz explained:

> A Form I-200 warrant empowers ICE to arrest aliens during removal proceedings. *See* 8 C.F.R. § 236.1(b)(1); 8 U.S.C. § 1226(a). Thus, a warrant issued before removal proceedings have begun purports to exercise authority that does not yet exist. *See, e.g., Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927 (S.D. Iowa 2026) ("The temporal aspects of this language are clear: an arrest warrant may be issued '[a]t the time of issuance' of the Notice to Appear or 'thereafter.' Not 'before.'") (quoting 8 C.F.R. § 236.1(b)(1)). To be valid, then, a Form I-200 warrant must issue "at the same time or after the Department of Homeland Security issues an NTA." *Martha C.G.P. v. Blanche*, No. 26-CV-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026). This is because an NTA is a "case-initiating pleading[]"—"like an indictment in a criminal case"—that "serves as the basis for commencing a grave legal proceeding." *Niz-Chavez v. Garland*, 593 U.S. 155, 163–64 (2021) (quotation omitted); *see also* 8 U.S.C. § 1229(a)(1) (stating that ICE "shall" give aliens in removal proceedings "written notice" of the proceedings in the form of a "notice to appear").

*Jesus F.D.*, No. 26-cv-2486 (PJS/DTS), slip. op. at 5–6 (D. Minn. June 10, 2026), ECF No. 10. I find Judge Schiltz's reasoning persuasive.

Respondents do not satisfy the fallback for a warrantless arrest. 8 U.S.C. § 1357 provides:

> Any officer or employee of the Service authorized under regulations prescribed by the Attorney General shall have power without warrant . . . to arrest any alien who in his presence or view is entering or attempting to enter the United States in violation of any law or regulation made in pursuance of law regulating the admission, exclusion, expulsion, or removal of aliens, or to arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest,

> but the alien arrested shall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States.

8 U.S.C. § 1357(a)(2). The Supreme Court has not construed "likely to escape," but it treats that circumstance as "specific" and "limited." *Arizona v. United States*, 567 U.S. 387, 410 (2012). Persuasive authorities interpret the phrase to mean, "likely to evade detention by immigration officers." *Moreno v. Napolitano*, 213 F. Supp. 3d 999, 1006–07 (N.D. Ill. 2016) (collecting cases); *see Campos v. United States*, 888 F.3d 724, 734–35 (5th Cir. 2018) (interpreting it to mean that an arrestee is likely to "disappear before a warrant could be obtained"); *Araujo v. United States*, 301 F. Supp. 2d 1095, 1102 (N.D. Cal. 2004) (finding no likelihood of escape where arrestee was living with his wife and had applied for lawful permanent resident status, "hardly evincing an intention to flee"). The requirement "considers not just whether the noncitizen will be located at the scene of encounter with immigration enforcement but also whether immigration enforcement would be able to arrest the noncitizens at another clearly identifiable location." *Walther Ademir A. S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *3 (D. Minn. June 16, 2026) (citation modified). Importantly, the probable-cause standard requires that "the totality of the circumstances known to all officers involved at the time of the arrest" indicated to a "prudent person[]" that the noncitizen was likely to escape. *United States v. Thompson*, 533 F.3d 964, 969 (8th Cir. 2008) (citation modified); *see United States v. Puebla-Zamora*, 996 F.3d 535, 538 (8th Cir. 2021) (applying probable-cause standard to § 1357(a)(2) arrest).

Respondents have not shown that Islamuddin was "likely to escape before a warrant [could] be obtained for his arrest." 8 U.S.C. § 1357(a)(2). By Respondents own account of Islamuddin's arrest, Respondents detained Islamuddin outside "his apartment complex," initiating the stop of Islamuddin's "known vehicle" by "activating emergency lights," after which Islamuddin "yielded to the right and came to a stop." ECF No. 6-8 at 2. Islamuddin "confirmed his name and date of birth when asked," and he was transported to Fort Snelling "without incident." *Id.* No record evidence supports the conclusion either that officers would be unable to locate Islamuddin or that he posed a risk of escape before a valid warrant could be obtained.

Respondents argue that no warrant was needed to arrest Islamuddin because he was subject to mandatory detention under 8 U.S.C. § 1225, and 8 U.S.C. § 1357's requirements for a warrantless arrest thus do not apply, ECF No. 9 at 4–5. I disagree. The great weight of persuasive authority from this District supports that a warrantless arrest under 8 U.S.C. § 1225(b)(2) must comply with § 1357. *See, e.g.*, *Luis A.S. v. Easterwood*, No. 26-cv-2447 (PJS/DTS), slip op. at 8 (D. Minn. May 26, 2026), ECF No. 9 ("ICE [cannot] simply arrest anyone who is subject to mandatory detention. Rather, ICE could detain [petitioner] only if it first complied with 8 U.S.C. § 1357(a), which addresses federal immigration officials' authority to make warrantless arrests." (citation modified)); *Juan J.M.E. v. Easterwood*, No. 26-cv-2270 (KMM/EMB), 2026 WL 1746672, at *3 (D. Minn. June 8, 2026) ("[I]f Congress wanted to make clear that 1225(b) provided a separate basis to arrest a noncitizen, 'it could have easily done so.'" (quoting *Avila v. Bondi*, 170 F.4th 1128, 1134 (8th Cir. 2026), *reh'g and reh'g en banc denied sub nom.*, 2026 WL 1746744 (8th Cir. June 17,

2026))), *R. & R. adopted sub nom. Juan M.E. v. Easterwood*, 2026 WL 1747756 (D. Minn. June 17, 2026); *Francisco M.A. v. Blanche*, No. 26-cv-2032 (JRT/EMB), 2026 WL 1229701, at *2 (D. Minn. May 5, 2026); *Fernando C. C. v. Bondi*, No. 26-cv-1235 (LMP/JFD), 2026 WL 446408, at *2 (D. Minn. Feb. 17, 2026); *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026); *see also Espinoza-Avalos v. Blanche*, No. 8:26CV191, 2026 WL 1396593, at *2 (D. Neb. May 19, 2026). I find these decisions persuasive.

Because I conclude Islamuddin was not served with a valid warrant at the time of his arrest, and because Respondents have not shown that his arrest complied with § 1357(a)(2), Respondents' objections will be overruled, the Report and Recommendation will be accepted, and Islamuddin will be ordered released. *See Felix Alberto J.M. v. Blanche*, No. 26-cv-2944 (LMP/DLM), 2026 WL 1906596, at *1, *3–5 (D. Minn. July 2, 2026); *Walther A.S. v. Blanche*, No. 26-cv-2804 (LMP/SGE), 2026 WL 1734906, at *4 (D. Minn. June 16, 2026); *Luis A.S. v. Easterwood*, No. 26-cv-2447 (PJS/DTS), slip op. at 9 (D. Minn. May 26, 2026), ECF No. 9; *Venancio P.J. v. Blanche*, No. 26-cv-2740 (ECT/JFD), 2026 WL 1862252, at *2–3 (D. Minn. June 29, 2026).[3]

[3] The resolution of this issue in Islamuddin's favor makes it unnecessary to consider the Petition's remaining grounds.

## ORDER

Therefore, based on the foregoing, and on all the files, records, and proceedings in this case, **IT IS ORDERED THAT**:

1. The Report and Recommendation [ECF No. 8] is **ACCEPTED** as described above;

2. Respondents' objections [ECF No. 9] are **OVERRULED**;

3. Petitioner Islamuddin A.'s Verified Petition for Writ of Habeas Corpus [ECF No. 1] is **GRANTED**; and

4. Respondents shall release Petitioner Islamuddin A. from immigration custody immediately.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 28, 2026

s/ Eric C. Tostrud
Eric C. Tostrud
Chief Judge, United States District Court